IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DONNA K. COFFEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09CV830 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Donna Coffey ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on January 25, 2005, alleging a disability onset date of May 28, 2004. (Tr. at 11.)[2] Her application was denied initially (Tr. at 51-54) and upon reconsideration (Tr. at 46-48). Thereafter, Plaintiff requested

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #8].

a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 41.) Plaintiff, along with her attorney, attended the subsequent hearing on March 10, 2008. (Tr. at 11.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 17) and, on September 22, 2009, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 3-5).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since May 28, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).
> . . . .
>
> 3. The claimant has the following severe impairment: degenerative disc disease status post back surgery (20 CFR 404.1520(c)).
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 494.1525 and 404.1526).
> . . . .
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day.

(Tr. at 13-14.)

In light of the above findings regarding residual functional capacity ("RFC"), the ALJ determined that Plaintiff was able to perform her past relevant work and therefore was not under a "disability," as defined in the Act, from her alleged onset date through the date of the decision. (Tr. at 16-17.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from only one severe impairment: "degenerative disc disease status post back surgery." (Tr. at 13.) The ALJ found at step three that this impairment did not meet or equal a disability listing. Therefore, Plaintiff's RFC was assessed, and the ALJ determined that Plaintiff could perform the full range of light work. (Tr. at 14.) Based on this determination, the ALJ determined at step four of the analysis that Plaintiff could return to her past relevant work as an insurance clerk and, as such, was not disabled.

Plaintiff argues that substantial evidence fails to support the Commissioner's findings at step two. In particular, Plaintiff claims that the ALJ failed to properly consider objective

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

evidence in the record of her carpal tunnel syndrome and a newly-herniated lumbar disc in her back, which Plaintiff contends are additional severe impairments. (Pl.'s Br. [Doc. #8] at 2.) In his decision, the ALJ noted that these impairments were not severe impairments because they were either "not supported by objective signs, symptoms, or laboratory findings" or they "no more than minimally affect her ability to perform work related activity." (Tr. at 13); see also 20 C.F.R. § 404.1508.

At step two of the evaluation process, the claimant must establish a "severe impairment," that is, an impairment or combination of impairments that significant limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms[.]" 20 C.F.R. § 404.1508. A non-severe impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); SSR 96–3p, Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe, at *1. Applicable regulations further provide that "basic work activities" include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

Plaintiff bears the burden of showing a severe impairment or combination of impairments at step two of the evaluation process. Although courts generally consider an impairment in any one of the above-quoted areas severe so long as it is not obviously slight, insignificant, or meaningless, see Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir. 1984), a plaintiff nonetheless must support any showing with relevant medical evidence:

> A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities. Williams, 844 F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).
>
> The determination at step two is based on medical factors alone. Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003). A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c). The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists. 20 C.F.R. § 404.1513(a). A claimant's statements regarding the severity of an impairment is not sufficient. Adame v. Apfel, 2000 WL 422341 at *3-4 (D. Kan. March 20, 2000); Flint v. Sullivan, 743 F. Supp. 777, 782 (D. Kan. 1990).

Rivas v. Barnhart, No. 05-1266 MLB, 2006 WL 4046153, at *4 (D. Kan. Aug. 16, 2006).

In the present case, Plaintiff first contends that two MRIs, dated April 5, 2006 and October 16, 2007, establish a recurrent disc herniation. (Pl.'s Br. at 3 (citing Tr. at 337 and 438).) In this regard, Plaintiff points out that the radiology report from her April 2006 MRI notes "a shallow disk herniation" at L5-S1. (Tr. at 438.) However, the record indicates a further review of this image by Dr. Robert Nudelman, a neurosurgeon who found "no evidence of disc herniation" and no need for surgical intervention. (Tr. at 153.) Instead, Dr. Nudelman referred Plaintiff back to her treating neurologist, Dr. Glenn, and her family physician, Dr. Tower, for ongoing care. (Id.) Moreover, the record indicates an additional MRI on June 20, 2007, which, according to Dr. Glenn, again demonstrated "no evidence of significant recurrent herniated disc." (Tr. at 268.) Likewise with respect to the October 2007 MRI, although the radiology report from this scan noted "a bulging and ruptured disc" at L5-S1 (Tr. at 337), the report from a subsequent MRI, performed on January 18, 2008, specifically observed that "[t]he previously noted disc rupture at the L5/S1 level is no longer evident as in the October 2007 study" (Tr. at 336). In fact, the later scan showed no evidence of disc rupture or herniation. (Id.) In his opinion, the ALJ noted as part of step two of the evaluation process that a new disk herniation was not supported by the medical evidence in the record, and then as part of the RFC formulation, the ALJ undertook a detailed analysis of those medical records. Having considered those records, the Court concludes that substantial evidence supports the ALJ's findings regarding Plaintiff's claim of a new disc herniation.

Plaintiff's challenge regarding her carpal tunnel syndrome similarly fails. In his opinion in this case, the ALJ did not include carpal tunnel syndrome as a "severe impairment" at step

two of the analysis. As to this determination, Plaintiff has not identified any medical evidence showing that her carpal tunnel syndrome was a severe impairment in the sense that it inhibited her capacity to perform basic work activities, and none is apparent from a review of the record. Rather, the record provides myriad physicians' notes indicating that while Plaintiff had a "history of carpal tunnel symptoms," those symptoms were "fairly stable" and "under fairly good control" throughout the relevant time period. (Tr. 269, 272, 276, 285, and 287-88.) The records also reflect full motor strength and sensation in Plaintiff's upper extremities during this time. (Tr. at 269, 282-83.) In addition, the records indicate that while she had a "symptomatic diagnosis of carpal tunnel," her nerve conduction studies in 2004 were normal, "without electrophysiologic evidence" of carpal tunnel syndrome. (Tr. at 288, 642.) Nerve conduction studies were conducted again in 2006, showing "no signs of conduction velocity deficits or latency problems, and a "[n]egative EMG nerve conduction study." (Tr. at 382.) The substantial evidence thus supports the ALJ's finding that Plaintiff's carpal tunnel syndrome was not an additional severe impairment.

Moreover, even if the ALJ erred by failing to identify Plaintiff's potential disc herniation and carpal tunnel syndrome as severe impairments at step two, this error would not warrant remand. "Where an ALJ has already determined that a plaintiff suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error, because, "'upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation.'" Young v. Astrue, Case No. 1:09CV1008, 2013 WL 474787 (M.D.N.C. Feb. 7, 2013) (quoting

10

Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir.1987), and citing Oldham v. Astrue, 509 F.3d 1254, 1256–57 (10th Cir.2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir.2007); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W.Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C.2010); Jones v. Astrue, No. 5:07CV452FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished)). In the present case, the ALJ found a severe impairment at step two based on Plaintiff's degenerative disc disease and prior back surgery and proceeded with the evaluation process. The ALJ then specifically considered all of the evidence, including Plaintiff's back condition and the weight of the evidence in the record with respect to Plaintiff's carpal tunnel symptoms, in formulating the RFC assessment. With respect to Plaintiff's back condition, the ALJ considered all of the evidence, including the various MRI studies and the ongoing treatments Plaintiff was receiving, in making the RFC determination of light work. (Tr. at 15-16.) With respect to the carpal tunnel symptoms and potential limitations, the ALJ noted the "unremarkable EMG/NCS reports and generally normal physical examinations" in concluding that additional restrictions were not required. (Tr. at 16.) Substantial evidence supports the ALJ's determination in this regard.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #7] be

DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #9] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 9th day of December, 2013.

/s/ Joi Elizabeth Peake<br>United States Magistrate Judge